Dickson vs. Dickson et al.

## No. 141.

### W. L. DICKSON vs. LIZZIE DICKSON ET. AL.

Where in 'an act of mortgage the property mortgaged is first described by legal sub-divisions and these sub-divisions are then declared to compose a certain plantation, giving the name thereof and otherwise sufficiently describing it apart from the sub-divisions mentioned, *held* that the mortgage rested on the plantation and that parol evidence was admissible to show that the description by the legal sub-divisions was erroneous and that said numbers did not, in whole or in part, compose the plantation.

APPEAL from the Second District Court, Parish of Bossier. *Drew*, J.

*J. D. & J. T. Watkins* for Plaintiff and Appellee.

*R. J. Looney, J. H. Shepherd* and *Loughery & Vance* for Defendants and Appellants.

The opinion of the Court was delivered by

TODD, J. A judicial partition having been made of the lands belonging to the succession of Hannah P. Dickson, Mrs. Mattie L. Dickson, subsequently to said partition, obtained a judgment recognizing and rendering executory a special mortgage against a part of the lands so partitioned.

This judgment rendered necessary certain supplementary proceedings relating to said partition, having in view the readjustment of the shares of the heirs of said deceased, on account of this mortgage, and to provide for its payment by the heirs, who bought the lands at the partition sale.

In these proceedings Mrs. Mattie L. Dickson, the mortgage creditor of Hannah P. Dickson, deceased, intervened for the purpose of enforcing her mortgage against the property subject thereto. In her petition she alleged that her mortgage rested upon the Rush Point plantation and that she was entitled to the proceeds of the same in the proportion of the mortgager's interest therein. She further alleged that in the act of mortgage certain lands were erroneously inserted and described by numbers or legal sub-divisions as composing Rush Point plantation which, in fact, formed no part of the said plantation, the property really mortgaged.

The opposing parties asserted that the description of the lands in the act of mortgage was correct and conclusive, and denied her right to alter the description or to introduce parol testimony to contradict, change or modify the same as shown by the act of mortgage.

This contention presents the main issue in the case for determination.

The property mortgaged is thus described in the act:

"All her right, title and interest to the following described property, to-wit:

" Fractional section three, the east half and the northwest quarter of the northeast quarter, and the west half and northeast quarter, and west half and northeast quarter of northeast quarter of section four, and northeast quarter and southwest quarter of section five; and the northwest quarter of northwest quarter of section eight, township twenty and range fourteen.

" Said property being the Rush Point plantation on which Michael A. Dickson, deceased, formerly resided, and now occupied by Mrs. Mattie L. Dickson, containing about six hundred and sixty acres, more or less, together with all the buildings and improvements thereon, lying on Red river nearly opposite Carolina Bluffs."

From a reading of the above description it seems to us that it was clearly the meaning and intention of the contracting parties that the property to be mortgaged was the Rush Point plantation. This is the necessary inference from the words " the said property being the Rush Point plantation," etc.

If the language of the act makes it clear that it was the Rush Point plantation that was mortgaged, then the numbers or the legal sub-divisions named in the act became secondary or merely descriptive of the subject of the contract—the thing mortgaged. It would be a bold proposition for either party to the contract to assert that the Rush Point plantation was not the subject of the mortgage, and one which would not be listened to, but to say that the numbers cited as composing the plantation did not, in fact, compose it, would not be strange, but be viewed as a misdescription of the property which, as well known, is of frequent occurrence in contracts of this kind.

The right which the creditor had was to enforce the mortgage on the Rush Point plantation, if that property was sufficiently described, and the right could not be defeated or affected by any errors in the description, whether in the numbers or otherwise, provided, that the description, taken as a whole, was sufficient to identify the property.

It seems to us clear, therefore, that there was nothing in the language of the act of mortgage, relating to the property mortgaged, that would prevent the intervenor, under the allegations of her petition from showing this misdescription of the property, and it was competent to do so by parol testimony. In like cases this right has never been denied. We cannot see anything in this case, on this point, to distinguish it from

the case of Levy vs. Ward, 33 Ann. 1033, where the authorities on this subject were all reviewed.

It was urged in argument by the defendant's counsel that that case was one instituted to correct an error alleged in the description of land sold and that this case differs from that one because there is no allegation of error. In this the counsel are mistaken, as we find in the petition of the intervenor a distinct allegation of an erroneous description of the property mortgaged—as we have before stated.

If the object of the parties was to effect a mortgage on the Rush Point plantation and that property was sufficiently described apart from the numbers—which we deem it to have been done under ample authority—the errors in the numbers could not defeat the true intent and purpose of the contract, and it follows as one of the plainest legal propositions that parol evidence was admissible to show the error.

If it be conceded that the real and true subject of the mortgage was the Rush Point plantation, and it was sufficiently described by metes and bounds or otherwise, and incorrectly described by numbers or legal sub-divisions, then it might be considered as presenting an ambiguity on the face of the act, which, without any allegation of fraud or error, might be explained by parol.

The evidence admitted shows what the Rush Point plantation embraced at the date of the mortgage; that some of the sub-divisions mentioned were not owned, at the time, by Mrs. Hannah P. Dickson, and some were separated from the plantation by an intervening proprietor, whose land was also included in the mortgage and which the mortgagor never claimed, which facts are strongly confirmatory of the mistakes made in the preparation of the act of mortgage.

It seems that a small part of hill land on the opposite side of Red river from the plantation in question, of little value, was purchased subsequent to the opening or establishment of the plantation. This tract was sold at the partition sale with the plantation, and as it could not be considered as forming a part of the plantation and subject to the mortgage, parol evidence was admitted to show the value of this land with a view to deduct its value from the total price at which the whole property—that is the plantation and the hill tract—was adjudicated, so as to ascertain the precise fund derived from the sale of mortgaged property. We think this evidence was properly admitted under the circumstances. We cannot well see how the object in view could have been reached without such testimony unless resort was had to other proceedings. And it is evidently the interest of all parties that this matter, involving but a small interest, should be thus settled.

From a complete and thorough review of the record we think the judge of the lower court reached a proper conclusion upon the facts of the law involved in the issues presented, and thus did justice between the parties, and the judgment appealed from is, therefore, affirmed, with costs.